Mary Sue MEADOWS, et al., Plaintiffs,

v.

FRIEDMAN RAILROAD SALVAGE WAREHOUSE, A DIVISION OF FRIEDMAN BROS. FURNITURE CO., INC., a Corporation, and Whelan Security Co., Inc., a Corporation, Defendants.

No. 45684.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 21, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1983.

Application to Transfer Denied
Sept. 20, 1983.

Fred Roth, St. Louis, for plaintiffs.

Ronald C. Willenbrock, Douglas B. Salsbury, Amelung, Wulff & Willenbrock, St. Louis, for Friedman Railroad Salvage.

Sam P. Rynearson, Erich V. Vieth, Evans & Dixon, St. Louis, for Whelan Security Co., Inc.

SMITH, Judge.

Plaintiffs appeal from the action of the trial court in dismissing their second amended petition seeking damages for personal injuries sustained by Mary Sue Meadows while on the premises of defendant Friedman Railroad Salvage Warehouse.[1] Mrs. Meadows was injured when she was assaulted and shot. We affirm.

There is no allegation that the attacker was an employee of defendants or in anyway connected with them or under their control. Plaintiff premised liability against Friedman on the following allegations:

(1) Friedman solicited customers to shop and make purchases upon its premises;

(2) Plaintiff was on the premises for that purpose;

(3) Friedman provided guard and security services "by reason of the fact that said defendant reasonably foresaw and anticipated danger upon their premises which they guarded and protected against and said guard service provided was based upon their knowledge of anticipated dangers, which had occurred in the past and which placed them on notice to provide a duty to Plaintiff and other customers to protect them against known and anticipated dangers of reasonably foreseeable and anticipated violence and vicious propensities of persons that had lurked about and remained upon the premises in the past;"

(4) Friedman failed to provide adequate security or an adequate number of properly trained security personnel and adequate supervision of the premises when they knew or should have known that there was a "likelihood of persons with dangerous propensities coming upon the premises to do harm to customers and invitees, such as Plaintiff;"

(5) Friedman failed to warn of the danger;

(6) Friedman failed to timely summon police when they knew or should have known "that persons with violent propensities were upon the premises and intent on doing violence to Plaintiff;"

(7) Friedman "failed to control the conduct of persons upon the premises who displayed violent conduct prior to Plaintiff being injured;"

(8) Friedman "failed and breached their duty to Plaintiff to protect her when they knew or should have known that persons of violent propensities were upon or would come upon the premises and may do violence to customers and invitees;" and

(9) Mrs. Meadows was injured as a result of Friedman's negligence.

Liability against Whelan was premised upon the following:

(1) Whelan provided guard and security services for Friedman;

(2) Whelan was negligent for the reasons set forth in the allegations against Friedman; and

(3) Whelan "failed to heed the solicitation of help and protection requested by the Plaintiff and failed to heed her pleas for help and only watched her being assaulted and shot and took no action to aid her in any way during the assault, although it anticipated and had reasonable foreseeability that such dangers did exist and would occur."

A petition seeking damages for negligence must allege ultimate facts which show (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of the defendant to perform the duty, and (3) injury to plaintiff resulting from such failure. *Scheibel v. Hillis,* 531 S.W.2d 285 (Mo. banc 1976) [1]; *Jackson v. Bi-State Transit System,* 550 S.W.2d 228 (Mo.App.1977) [1]. In Missouri, the owner of a business property is not

1. Noah Meadows sought consortium damages.

liable for misconduct or negligent acts of third persons unless the third persons are acting under direction or control of the owner, or where their actions could have been reasonably anticipated and guarded against. *Pizzurro v. First North County Bank and Trust Company,* 545 S.W.2d 348 (Mo.App.1976) [1, 2]. There exists no general duty to protect a plaintiff against the intentional criminal conduct of unknown third persons. *Irby v. St. Louis County Cab Co.,* 560 S.W.2d 392 (Mo.App.1977) [14]. Such a duty can arise where "special relationships" or "special circumstances" exist such that an act or omission exposes someone to an unreasonable risk of harm through the conduct of another. *Irby v. St. Louis County Cab Co., supra,* [10, 11]. *See also, Scheibel v. Hillis, supra.* Special relationships include those in which a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. Such relationships are usually delineated as those of innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee. *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881 (Mo. banc 1983); *Goldberg v. Housing Authority of Newark,* 38 N.J. 578, 186 A.2d 291 (1962). None of those relationships are involved here.

■ Special facts include those in which a known dangerous or violent individual is present (*Scheibel v. Hillis, supra*), or where an individual present has conducted himself so as to indicate danger and sufficient time exists to prevent injury (*Pizzurro v. First North County Bank and Trust Company, supra*). Some cases from other jurisdictions have found such "special facts" where frequent violent crimes have occurred recently on the same premises or in very close proximity. *Atamian v. Supermarkets General Corp.,* 146 N.J.Super. 149, 369 A.2d 38 (1976); *Butler v. Acme Markets,* 177 N.J.Super. 279, 426 A.2d 521 (1981); *Foster v. Winston-Salem Joint Venture,* 303 N.C. 636, 281 S.E.2d 36 (1981). There is authority to the contrary. *Goldberg v. Housing Authority of Newark, supra; Cornpropst v. Sloan,* 528 S.W.2d 188 (Tenn.1975); *Cook v. Safeway Stores, Inc.,* 354 A.2d 507 (D.C. 1974). For an annotation on the cases, see 10 A.L.R.3d 619 (1966). In *Irby v. St. Louis County Cab Co., supra,* this court held that such special facts did not exist simply because the area was one of "high crime."

■ Cases frequently discuss the matter in terms of "foreseeability" or that the criminal act is an intervening or superseding cause, if the two are in fact different theories. *Virginia D. v. Madesco Investment Corp., supra.* In a practical sense, crime (violent or non-violent) is regrettably foreseeable in today's society any place, any time. In approaching the problem, the authorities have generally recognized that the duty is not determined by the foreseeability of a criminal act, but upon whether a duty exists to take measures to guard against it. Whether such duty exists depends ultimately on the question of fairness, which in turn is decided by a weighing of the relationship involved, the nature of the risk, and the public interest in the proposed solution. *Goldberg v. Housing Authority of Newark, supra.* In the final analysis, the matter is one of policy. We need not set forth at length the arguments on each side. They have been discussed elsewhere. *Goldberg v. Housing Authority of Newark, supra.* It is sufficient to say that courts generally have not imposed a duty on the part of commercial businesses to protect against crime in the absence of a special relationship or special facts set forth above.

■ With these principles in mind, we examine plaintiffs' petition. The petition does not allege that specific prior crimes occurred on the premises, that specific individuals committed violent acts on the premises, that Mrs. Meadows' attacker had ever been on the premises before, that he had ever acted violently before or that defendants were aware or even could have been aware of his presence and potential danger in sufficient time to avert the attack or request police assistance. At most, the petition reflects that the Friedman premises were located in a "high crime" area where criminal conduct would be more foreseeable than in some other area. Such allegations are insufficient "special facts" to create a duty on the part of defendants, even in

those jurisdictions upholding a duty where incidents of actual crime had occurred on the premises or nearby. No special relationship other than commercial business-invitee is plead. We find no duty on the part of defendants to plaintiffs on the facts alleged.

The same is true of the allegations against Whelan of failing to assist plaintiff when she was attacked. There are no allegations that would indicate sufficient time elapsed after Whelan became aware of the danger of a specific attack for police assistance to be summoned and to have prevented Mrs. Meadows injuries. Nor does the law impose a duty on Whelan's employees to attempt intervention themselves when Mrs. Meadows was attacked by an armed criminal. Risking their lives, and possibly that of Mrs. Meadows, is not a duty imposed on them by law.

Judgment affirmed.

PUDLOWSKI, P.J., and KELLY, J., concur.