Melissa FAHEEN, by and through her Guardian, Mary C. HEBRON, and Sadie Faheen, Plaintiffs-Appellants,

v.

CITY PARKING CORPORATION, a corporation,

and

Mansion House Center South Redevelopment Company, a limited partnership,

and

Mansion House Center South Tower Redevelopment Corporation, Norman S. Altman, E.J. Ehrlich, Hart Perry, Pierre Heftler, general partners, Defendants-Respondents.

No. 52523.

Missouri Court of Appeals, Eastern District, Division Three.

July 28, 1987.

George L. Fitzsimmons, St. Louis, for plaintiffs-appellants.

James P. Lemonds, St. Louis, for City Parking Corp.

James E. Whaley, St. Louis, for Mansion House Cent. South Tower Redevelopment Corp., Norman Altman, and Pierre Heftler.

E.J. Ehrlich, pro se.

Hart Perry, pro se.

CRANDALL, Judge.

Plaintiffs, Melissa Faheen, the sole surviving child of George Faheen, by and through her next friend Mary C. Hebron, and Sadie Faheen, the mother of George Faheen, brought this action for the wrongful death of George Faheen. Defendants, Mansion House Center South Tower Redevelopment Corporation, Norman S. Altman, Pierre V. Heftler, E.J. Ehrlich, and Hart Perry, are the general partners of Mansion House Center South Redevelopment Company, which owns the Mansion House Center apartment complex and its attached parking garage. Defendant, City Parking Corporation, operates the garage. Upon motion of defendants, the trial court dismissed with prejudice plaintiffs' second amended petition for failure to state a claim. Plaintiffs appeal from that order. We affirm.

We first consider the relevant allegations of fact in plaintiffs' petition. On October 16, 1981, George Faheen died in a car bombing which occurred in the Mansion House parking garage. George Faheen was a tenant of Mansion House with the right to use the parking garage. From January 1, 1976 to October 31, 1981, crimes had been reported on the premises of the Mansion House complex or in close proximity thereto. Those reported incidents of crime, which included arson, robbery, assault, burglary, stealing, and various misdemeanors, were known to defendants. The substantial majority of the reported

crimes were crimes against property. Prior to George Faheen's death, there had not been a murder or a bombing at Mansion House.

Plaintiffs allege that defendants negligently failed to take reasonable precautions, in the form of adequate security or warning, to protect the tenants of Mansion House from criminal assaults in the parking garage by unknown third persons. Plaintiffs contend that this negligence was the proximate cause of George Faheen's death.

■ The salient issue is whether plaintiffs state a claim for actionable negligence. In an action for negligence, plaintiff must allege ultimate facts which, if proven, show (1) the existence of a duty on the part of defendant to protect plaintiff from injury, (2) failure of defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure. *Meadows v. Friedman R.R. Salvage Warehouse,* 655 S.W.2d 718, 720 (Mo.App.1983).

■ In this appeal, we focus on the first element, the existence of a duty. As a rule, a party has no duty to protect another from a deliberate criminal attack by a third person. *Meadows,* 655 S.W.2d at 718; *see generally* Annot. 10 A.L.R.3d 619, 626 et seq. Policy reasons for this rule include: judicial reluctance to tamper with a traditional, common law concept; the notion that the deliberate criminal act of a third person is the intervening cause of harm to another; the difficulty that often exists in determining the foreseeability of criminal acts; the vagueness of the standard the owner must meet; the economic consequences of imposing such a duty; and conflict with the public policy that protecting citizens is the government's duty rather than a duty of the private sector. *Nappier v. Kincade,* 666 S.W.2d 858, 860 (Mo.App. 1984) (citing *Cornpropst v. Sloan,* 528 S.W.2d 188, 195 (Tenn.1975)).

■ Despite this general rule, the law recognizes some obligations of a party to protect others against a deliberate criminal attack by a third person. *See Meadows,* 655 S.W.2d at 721; Restatement (Second) of Torts, Section 302B comment e (1965). These exceptions include, *inter alia,* obligations arising from "special relationships" or "special facts and circumstances." *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976); *Meadows,* 655 S.W.2d at 721.

■ The concept of a special relationship exists when one entrusts himself to the protection of another and relies upon that person to provide a place of safety. *Nappier,* 666 S.W.2d at 861; *Virginia D. v. Madesco Investment Corporation,* 648 S.W.2d 881, 885–886 (Mo. banc 1983). Special relationships which are recognized in Missouri include innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee. *Meadows,* 655 S.W.2d at 721. In those situations, the relationship alone gives rise to the duty.

■ Plaintiffs concede that this is not a "special relationship" case. They assert liability under the "special facts and circumstances" exception. A special facts exception requires some relationship between the plaintiff and the defendant which encourages the plaintiff to come upon the defendant's premises.

■ In the case *sub judice,* the pleaded relationship is that of landlord and tenant. That relationship is not recognized in Missouri as a special relationship which, in itself, gives rise to a duty. *Advanced Rental Centers, Inc., v. Philip Brown and Morelock-Ross Builders, Inc.,* 729 S.W.2d 644, 646 (Mo.App.1987). Rather, that relationship plus other elements may give rise to the duty to protect. *See, e.g., Brown v. Nat. Supermarkets,* 679 S.W.2d 307 (Mo. App.1984); *Vorbeck v. Carnegie's at Soulard, Inc.,* 704 S.W.2d 296 (Mo.App.1986); *Warren v. Lombardo's Enterprises, Inc.,* 706 S.W.2d 286 (Mo.App.1986).

■ The special facts exception includes two possible theories of liability: (1) an intentional infliction of injury by known and identifiable third persons; or (2) frequent and recent occurrences of violent crimes against persons on the premises by unknown assailants. *Irby v. St. Louis County Cab Co.,* 560 S.W.2d 392 (Mo.App. 1977); *Scheibel,* 531 S.W.2d at 288; *Piz-*

zurro v. First North County Bank and Trust Co., 545 S.W.2d 348 (Mo.App.1976); Brown, 679 S.W.2d at 309; Vorbeck, 704 S.W.2d at 296; Warren, 706 S.W.2d at 288. Under the first theory, the duty may arise when a person, known to be violent, is present on the premises or an individual is present who has conducted himself so as to indicate danger and sufficient time exists to prevent injury. Meadows, 655 S.W.2d at 721. Missouri and other jurisdictions generally recognize a duty in the known third person situation. This is consistent with the duty of an owner/occupier, whether he be a landlord or a shopkeeper, to exercise ordinary care to make his premises safe for customers. Nappier, 666 S.W.2d at 862.

In this case, however, the murderer of George Faheen is unknown. If plaintiffs state a claim, it is under the second theory of the special facts exception; that is, violent crimes committed by unknown assailants.

The first consideration is whether Missouri courts recognize this second theory. Only if that question is answered in the affirmative do we reach the question of whether or not plaintiffs properly pleaded that exception. In Meadows and Nappier, this court discussed the split of authority in other jurisdictions on the issue of whether frequent violent crimes on the premises of a business or in very close proximity thereto constitute special circumstances and impose a duty on the owner or occupier of the property to take measures to guard against criminal activity. Neither case specifically held that the violent crimes exception existed in Missouri.

Based in part on the Meadows and Nappier opinions, we held in Brown v. National Supermarkets, Inc., 679 S.W.2d 307, (Mo.App.1984) that a business owner may have a duty to its patrons under the violent crimes exception. The parameters of that duty were not fully articulated in Brown because it was unnecessary to the holding which reversed a summary judgment in favor of defendant. Brown was cited with approval by this court in Vorbeck v. Carnegie's, 704 S.W.2d 296 (Mo.App.1986).

In Warren v. Lombardo's, 706 S.W.2d 286 (Mo.App.1986) this court criticized, but did not overrule, the Brown opinion. Warren reemphasized the admonition of Meadows that allegations that premises are located in a high crime area where criminal conduct would be more foreseeable than in some other area are "insufficient 'special facts' to create a duty on the part of defendants even in those jurisdictions upholding a duty where incidents of actual crime had occurred on the premises or nearby." Warren, 706 S.W.2d at 288. Brown and Warren are not disharmonious. Warren simply represents a further articulation of the narrow parameters of the violent crimes exception recognized in Brown.

With these cases as a backdrop, several postulates emerge regarding the imposition of a duty on the owner of property. First, a defendant is not an insurer of his invitee's safety and is ordinarily under no duty to exercise any care against the criminal acts of third persons. Second, crime is foreseeable in our society, any place, anytime. Meadows, 655 S.W.2d at 721. The fact that crimes in general have occurred in an area or that a business is located in a "high crime" area is insufficient to invoke the duty. Third, although the case law and comments use terms such as "foreseeability," "proximate cause," and "intervening cause," the final resolution of the issue is dictated by basic fairness and public policy. "Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution." Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 186 A.2d 291, 293 (1962).

We conclude that the violent crimes exception, recognized in Brown, is a viable legal theory in Missouri. This exception contains certain elements. First, there must exist the necessary relationship between a plaintiff and a defendant, as described earlier in the opinion. Next, there must be prior specific incidents of violent crimes on the premises that are sufficiently numerous and recent to put a defendant on notice, either actual or con-

structive, that there is a likelihood third persons will endanger the safety of defendant's invitees. Finally, the incident causing the injury must be sufficiently similar in type to the prior specific incidents occurring on the premises that a reasonable man would take precautions to protect his invitees against that type of activity. *Compare Cornpropst;* Restatement (Second) of Torts Section 344 comment f (1965).

The difference between the special facts exception involving known third persons inflicting harm versus unknown third persons inflicting harm is nothing more than knowledge of the identity of the offender. Both involve situations of extraordinary danger. The basic requirements of notice, specificity, and probability of harm to the victim are the same. The public policy and general fairness objectives are equated.

Turning to the specific issue in plaintiffs' petition, we hold that the trial court properly sustained defendants' motion. The pleaded reports of crimes are not limited to the parking garage in question; but cover the Mansion House facilities, an entire city block. The reports of violent crimes are neither frequent nor recent.

Most important to our decision are the types of crimes reported. There are no prior homicides or car bombings. A homicide or injury caused by a car bombing is significantly different from the reported crimes set forth in plaintiffs' petition.

George Faheen was the victim of an assassin. There is nothing in plaintiffs' petition that would put a reasonable man on notice that he should take precautions to protect his invitees against such a misdeed.

The order of the trial court is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.