**Carol A. KEENAN,**
**Plaintiff–Respondent,**

v.

**MIRIAM FOUNDATION,**
**Defendant–Appellant.**

**No. 56420.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 2, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 14, 1990.

F. Douglas O'Leary, Moser & Marsalek, and Christiana Rush, St. Louis, for defendant-appellant.

James P. Krupp, Robert Henry Pedroli, and Daniel Gauthier, St. Louis, for plaintiff-respondent.

## I.

SIMEONE, Senior Judge.

This is an appeal by defendant-appellant, Miriam Foundation, from a judgment entered on January 18, 1989 by the circuit court of the City of St. Louis upon a verdict awarding plaintiff-respondent, Carol Ann Keenan, $35,000 damages for injuries sustained when she was assaulted and shot by an unknown assailant while on the premises of the Miriam Foundation, located in the City of St. Louis. We affirm.

## II.

The Miriam Foundation is a not-for-profit corporation located on Skinker Boulevard in the City of St. Louis. It accepts donated merchandise which it then sells to customers. Carol A. Keenan had both donated and purchased merchandise, such as chairs

and dishes, several times before the day she was injured, February 13, 1986. Mrs. Keenan lived in a subdivision about two blocks from the Foundation. The area in which she lived was a high crime area. A few days before February 13, 1986, Mrs. Keenan purchased some dishes. She was desirous of donating and delivering them to the Foundation. She inquired about bringing the dishes to the Foundation and was told to bring them around about 4:00 p.m., because then "there would be some men to help me unload [them]." The dishes were in boxes. She loaded up her "Rabbitt" and went to the Foundation. She parked in front of the shop. She went inside, and met an employee. The employee asked her if she would drive "to the back" so that someone could help her. Mrs. Keeenan replied that she "didn't really want to go back there" because of the character of the neighborhood and the employee said, "there would be somebody with [her]." She then drove to the "back yard area" and waited until someone unlocked the gate of the fence. The lot was enclosed by a twelve-foot, cyclone, barbed-wire fence. When the man opened the gate, he motioned her in. The gate was not closed. Mrs. Keenan drove onto the lot, got out of the car, and two men, employees of the Foundation, began unloading the boxes and taking them into the Foundation. At one point, one of the men dropped a box and "everything spilled out." The two men carried the goods inside and left Mrs. Keenan alone on the lot for some five to ten minutes. While she was alone, she saw a "movement" and heard a voice; two men were standing near her—one with his face covered with a ski-mask. One of the men said "drop it", meaning her purse. He grabbed the strap of her purse. Mrs. Keenan was then hit on her head at the temple, then she received another blow to her hand and a third blow to her neck and shoulder. One of the men had a gun. A shot was fired, and Mrs. Keenan was hit in her left leg. The two men ran. Mrs. Keenan went inside the shop for help. The police and an ambulance eventually came and she was taken to the emergency room of Barnes Hospital. The physicians decid-

ed not to remove the bullet from her thigh, so that the bullet remains in her leg. She has suffered pain, and even at the time of trial, the injury causes fatigue and inhibits her work. The assailants were never found.

One of the two men who helped Mrs. Keenan unload the boxes, Charles Schroeter, testified that it was part of his duties to protect the safety of individuals who pulled their cars into the back area to be unloaded, and that he did leave Mrs. Keenan there alone.

At trial, certain police reports showing that various crimes had occurred at the Foundation were admitted into evidence over the objections of appellant. Eighteen police reports were introduced showing previous criminal acts occurring on the premises between June, 1984 through 1985. At least ten of the reports involved shoplifting or stealing under $150.00 of various items, including clothing, a lamp and a chair. There were two incidents of purse snatchings, one from one of the witnesses, who had her purse taken while she sat in an automobile on the premises, and the other from one Ms. Coleman. There was evidence of a theft from the cash register in the amount of $80.00; and a theft of an automobile from the parking lot. All these police reports were objected to, first by a motion *in limine* prior to trial, and then during trial, on the ground they were irrelevant on the grounds that the reports show that the crimes were of a non-violent nature and show no violence involving a customer. The court overruled the objections to the reports stating that it had considered the cases of *Faheen by Hebron v. City Parking Corp.*, 734 S.W.2d 270 (Mo.App. 1987); *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59 (Mo. banc 1988); and *Decker v. Gramex Corp.*, 758 S.W.2d 59 (Mo. banc 1988). After concluding that "these stealings were close enough to type of crime we have here"—a purse snatching which escalated into an assault, the court overruled appellant's objections. In addition to the police reports, the then floor manager of the shop testified that her hus-

band's automobile was stolen "on more than one occasion."

A part-time security guard, Brian Troupe, testified that on one occasion, after he began working at the Foundation, three youths were in the shop causing some "problems." He asked them to leave; they "got hostile" and went outside. Outside, one of the youths picked up a brick and "cocked it back with his arm," and Troupe told him "if he threw the brick, I would shoot him." On another occasion, a man was inside the shop attempting to put clothing under his coat, and Troupe asked him to leave. The man became insulting, and took a swing at Troupe. Troupe "slammed" him down to the pavement. Troupe reported this incident to the Miriam "people."

At the close of the plaintiff's case, appellant filed a motion for a directed verdict on the ground that plaintiff failed to prove any kind of "violent or frequent violent" crimes which would create a duty on the part of the defendant.

After instructions, the jury returned a verdict in favor of Mrs. Keenan in the amount of $35,000. In proper time, Miriam filed its alternative motions for "judgment notwithstanding the verdict" and for a new trial.

### III.

On appeal, Miriam contends that the trial court erred in overruling its motion for a directed verdict at the close of the evidence and its motion for judgment notwithstanding the verdict because plaintiff produced no substantial evidence of "violent crimes" against individuals on its premises, either as customers or otherwise, prior to the incident in which plaintiff was injured, hence no duty toward plaintiff was breached. Miriam urges that under the present state of the law, evidence showing only shoplifting, stealing, thefts, and purse snatchings are not sufficient to make a submissible case because the stealing incidents did not involve violent crimes directed toward customers, and the two purse snatchings, while involving personal confrontations entailed no violence or injuries.

Alternatively, appellant contends it is entitled to a new trial because the admission of the police reports showing the thefts and purse snatchings was irrelevant and prejudicial.

The respondent, Mrs. Keenan, contends that the judgment should be affirmed because of a "special relationship" or that "special circumstances" existed since, by the actions and statements of its employees, Miriam assumed a duty to provide for the plaintiff's safety. She argues that (1) the facts and circumstances "along" with the incidents of criminal activity prior to plaintiff's injury made the injury foreseeable, (2) plaintiff entrusted her safety to the appellant and "relied" on appellant's express and implied assurances of safety, (3) Miriam breached its duty by exposing her to an unreasonable risk of harm by leaving her alone in the back area with the gate open; and (4) any question of the admissibility of other incidents of crime should be decided in her favor because the admission of this evidence was not prejudicial, but only cumulative.

Respondent contends, therefore, that, under the facts, a duty was assumed by appellant to provide for her safety when she was left alone in the back area because appellant could have foreseen that she was exposed to an unreasonable risk of harm. Hence, the admission of the police reports was relevant.

There are two issues to be resolved in this proceeding: (1) whether, under the facts, Miriam assumed a duty to provide for the safety of plaintiff and failed to carry it out, and (2) whether the evidence of prior *non-violent* crimes contained in the police reports and other incidents are relevant and admissible in evidence.

### IV.

■ We address the issues in inverse order. As a general rule, a business is under no duty to protect an invitee from a deliberate criminal attack by a third person. *Madden*, 758 S.W.2d at 61; *Meadows v. Friedman Railroad Salvage Warehouse*, 655 S.W.2d 718, 721 (Mo.App.1983);

*Warren v. Lombardo's Enterprises, Inc.,* 706 S.W.2d 286 (Mo.App.1986); *see generally,* 10 A.L.R.3d 619, 626. This is true even though the area is one of "high crime." *Irby v. St. Louis County Cab Co.,* 560 S.W.2d 392, 395 (Mo.App.1977). There are numerous policy reasons for this principle. *See Nappier v. Kincade,* 666 S.W.2d 858, 860 (Mo.App.1984); *citing, Cornpost v. Sloan,* 528 S.W.2d 188, 195 (Tenn.1975); *Faheen,* 734 S.W.2d at 272.

■ Despite this general principle, it has come to be recognized that there are some obligations imposed upon a party to protect others against a deliberate criminal attack by a third person. *Meadows,* 655 S.W.2d at 721; *Madden,* 758 S.W.2d at 61; Restatement (Second) of Torts, § 344. These exceptions to the general principle include obligations arising from (a) "special relationships" or (b) "special facts and circumstances," such that an act or omission exposes a person to an unreasonable risk of harm through the conduct of another. *Meadows,* 655 S.W.2d at 721; *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976); *Faheen,* 734 S.W.2d at 272. "Special relationships" include those in which a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. *Nappier,* 666 S.W.2d at 861. Such relationships include innkeeper-guest, common carrier-passenger, school-student, and sometimes employer-employee, but do not include the landlord-tenant relationship. *Faheen,* 734 S.W.2d at 272; *Meadows,* 655 S.W.2d at 721; *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881 (Mo. banc 1983); *Advance Rental Centers, Inc. v. Brown,* 729 S.W.2d 644, 646 (Mo.App.1987); *Conroy v. Solon Gershman, Inc.,* 767 S.W.2d 381 (Mo.App.1989). *Cf., Aaron v. Havens,* 758 S.W.2d 446 (Mo. banc 1988)—tenant raped by intruder using fire escape.

The "special facts" exception includes two theories: (1) an intentional infliction of injury by known and identifiable third persons; or (2) frequent and recent occurrences of *violent* crimes against persons on the premises by unknown assailants. *Faheen,* 734 S.W.2d at 272 and cases cited at 273; Comment, *Owners Duty To Protect Invitees From Third Party Criminal Attacks,* 54 Mo.L.Rev. 443 (1989). Under the first theory, the duty may arise when a person, known to be violent, is present on the premises or an individual is present who has conducted himself so as to indicate danger. The second theory, while there is a split of authority on the subject, has been recognized in Missouri. In *Meadows* and *Nappier,* this court discussed the issue of whether frequent and violent crimes on the premises of a business constitute special circumstances and impose a duty on the owner or occupier of the property to take measures to guard against criminal activity. Neither case, however, specifically held that the violent crimes exception existed in Missouri. *Faheen,* 734 S.W.2d at 273. But based in part on *Meadows* and *Nappier,* this court held in *Brown v. National Supermarkets,* 679 S.W.2d 307 (Mo.App. 1984) (*Brown I*), that a business may have a duty to its patrons under the violent crimes exception. The limits of that duty, however, were not fully articulated in *Brown I* since it was unnecessary to the holding.

In *Faheen,* this court recognized several postulates regarding the imposition of a duty on the owner of property for premises liability: (1) the owner is not an insurer, and is ordinarily under no duty to exercise any care against the criminal acts of a third person; (2) crime is foreseeable in society, but the fact that crimes, in general, have occurred in an area or that a business is located in a high crime area is insufficient to invoke the duty; (3) although decisions invoke such terms as "foreseeability," "proximate cause," and "intervening cause," the final resolution is dictated by fairness and public policy. *Meadows,* 655 S.W.2d at 721; *Warren,* 706 S.W.2d at 288. *Faheen,* also fully and definitively recognized that premise's liability could be imposed upon an owner of property or a business, and that the "violent crimes exception, recognized in *Brown [I]* is a viable legal theory in Missouri." *Faheen,* 734 S.W.2d at 273.

■ To utilize the "violent crimes" exception to impose a duty on a landowner for premises liability, certain elements are essential: (1) there must exist the necessary relationship between a plaintiff and a defendant, (2) there must be evidence of prior specific incidents of violent crimes on the premises that are sufficiently numerous and recent to put a defendant on notice, either actual or constructive, that there is a likelihood that third persons will endanger the safety of defendant's invitees, and (3) the incident causing the injury must be sufficiently similar in type to the prior specific incidents occurring on the premises that a reasonable person would take precautions against that type of activity. *Faheen*, 734 S.W.2d at 274.

The sense of these decisions is that the special duty of care by a business or property owner to an invitee arises where prior criminal acts may reasonably be expected to be repeated and to thereby forecast a potential hazard to customers. *Keesee v. Freeman*, 772 S.W.2d 663, 669 (Mo.App. 1989).

These decisions were not overruled by the Supreme Court in *Madden, supra,* and *Decker, supra.* Rather, the duty was cast in terms of foreseeability. The Supreme Court held that a landowner may well be liable for an injury depending upon the facts and circumstances and whether, because of the incidents of prior crime, the landowner could reasonably foresee injury. The court did adhere to the principle that the incidents of prior criminal activity involve prior violent acts.

All of these decisions deal with the duty imposed by law upon the owner of a business for premises liability. They do not involve a situation where the defendant assumed a duty. For a duty to arise based upon premises liability, the prior specific incidents of criminal acts must involve violent crimes, as distinguished from non-violent ones. *Faheen, Madden, Meadows, Brown I,* and *Keesee v. Freeman,* all *supra.*

In *Vorbeck v. Carnegie's at Soulard, Inc.,* 704 S.W.2d 296 (Mo.App.1986), where the allegations of prior crimes in a petition consisted only of larceny and burglary, this court held that the petition alleging such non-violent crimes did not state a claim. In *Brown v. National Super Markets, Inc.,* 731 S.W.2d 291 (Mo.App.1987) (Brown II), we held that the trial court did not err in excluding evidence of 14 purse snatchings or property crimes that did not involve physical contact with the victims.

Therefore, if we were dealing here only with the imposition of a duty imposed by law for premises liability based on the "violent crimes" exception, it would be clear that the police reports reporting non-violent crimes—prior thefts, purse snatchings, stolen cars, and the incidents involving Brian Troupe—would be irrelevant and inadmissible to raise a duty on the part of the appellant for premises liability.

### V.

But a distinction must be made between a business being responsible for a criminal act committed upon a person based on premises liability under the "violent crimes" exception, and a situation where the owner of a business assumes a duty to provide for the safety of a person and to provide protection to an invitee from forseeable harm, and then fails to carry out that duty.

Generally, a duty to exercise care may not only be imposed by ordinance or a controlling statute, but the duty may be assumed or may be imposed by common law. *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976).

From the earliest days of the common law, it has been recognized that a duty may be assumed or undertaken, and when so assumed, the defendant must exercise reasonable care. *Wolfmeyer v. Otis Elevator Co.,* 262 S.W.2d 18, 23 (Mo.1953).

■ When the duty is imposed by law, the prior incidents of crime must be of a violent nature and sufficiently numerous and recent to put the defendant on notice, either actual or constructive, that there is a likelihood of danger to the safety of the defendants' invitees, and the incident causing the injury must be sufficiently similar

to the prior specific incidents. Unless these essentials are met, the evidence is irrelevant and inadmissible. In that instance, the introduction of evidence of violent crimes is relevant and is important to impose a duty. But where the property owner or business assumes a duty to provide safety to an invitee, evidence of, and knowledge of previous criminal activity, whether violent or not, goes not to the imposition of a duty, as in the premises liability cases, but to the level of care required by the owner of the premises. In the latter situation, evidence of criminal activity, whether violent or not, is, therefore, relevant and admissible.

The duty, a question of law (*Aaron v. Havens*, 758 S.W.2d at 44), having been assumed and established, the frequency and nature of the crimes occurring on the premises, whether violent or not, are relevant for the jury to assess the level of care required to protect the invitee's person and property. Under such circumstances, it is then the jury's function to determine whether the level of care required was provided and whether the duty was breached.

■ Under the facts here, when Mrs. Keenan went to Miriam's on February 13, 1986, to donate the items, she parked in front of the establishment and went inside, confronted an employee, and said "I'm here with the boxes, can I have some help." The employee asked her to drive to the back area, and said "there would be someone there to unlock the gate and help [her] unload the car." Mrs. Keenan was reluctant to go to the "back area," but the employee said there would be "somebody with [her]." Mrs. Keenan knew of the character of the neighborhood and the back area where apartments were located nearby. The employee assured her it would be "all right." She went to the back area where one of the two men unlocked the gate on the high, barbed wire fence, but left the gate open. When both men unloaded the boxes, and after one broke, and both men went inside, they left her alone for what she said was for some five to ten minutes, during which time the attempted purse snatching, assault and shooting oc-

curred. Charles Schroeter acknowledged that Mrs. Keenan was left alone in the area, and acknowledged that it was part of his "job" to stay "out there with people on the lot." One of the employees who testified, Mrs. Wright, stated that the apartments add danger to the area. By driving to the back area, Mrs. Keenan received an assurance that someone would be available to provide protection to her person and her property.

Under these circumstances, appellant assumed a duty to protect plaintiff from an unreasonable risk of harm, and failed to carry out the assumed duty to provide for the safety of the plaintiff from attacks by third persons.

All of the evidence indicates that appellant undertook and assumed a duty to provide a place of safety for plaintiff from criminal acts, violent and non-violent, and because of the assumption of that duty, the jury could reasonably find, from the evidence, that the duty had been breached.

In her petition, plaintiff pleaded the assumption of the duty by the appellant. In addition to alleging that defendant had a duty to protect her because it knew or should have known that attacks on its premises were likely to occur, she pleaded that the defendant affirmatively directed and invited her to an area that it claimed was safe, and that defendant undertook a duty to provide a secure area and made representations that the location where the attack occurred was a secured area. The evidence, therefore, was within the confines of the petition.

The conclusion we reach finds support in analogous Missouri decisions. In *Warren v. Lombardo's Enterprises, Inc., supra*, an injured customer and wife brought actions against a restaurant for robbery and shooting in the parking lot, a block away from the restaurant where parking attendants were available. Plaintiffs contended that since parking attendants were available, defendant voluntarily undertook a duty to protect plaintiffs. In that case, this court held that the plaintiffs had not pleaded that contention and furthermore, people hired to park cars were not security personnel so that no duty was undertaken. Clearly im-

plied in *Warren* was the principle that if a duty had been assumed or undertaken, a different result would have been most probable.

The case here is also akin to *Virginia D., supra.* There the Supreme Court held there is a special relationship between hotel operators and guests so as to impose affirmative duties in the protection of persons and property. In *Virginia D.,* the duty was imposed because of the special relationship between hotel and guest. Here the duty was assumed and undertaken by Miriam to provide a place of safety for her person and property while the boxes of dishes were being unloaded in the back area.

The assumption of a duty has been recognized under the law of Missouri. In *Brown v. Michigan Millers Mut. Ins. Co.,* 665 S.W.2d 630 (Mo.App.1983), plaintiffs were badly injured and burned in an explosion that occurred in a grain elevator. Plaintiffs were engaged to clean up a spill and the cleanup was being conducted by a vacuum machine. The explosion occurred as a result of the buildup of static electricity in the plastic pipe used in the system. The plaintiff's theory of recovery was that the defendants had undertaken to inspect for hazards and failed to discover the plastic pipe, although they knew or should have known that the condition was hazardous. The court affirmed judgments for plaintiffs and noted that "Missouri case law supports the proposition that one who acts gratuitously or otherwise is liable for the negligent performance of the act, even though there was no duty to act." Under this theory, there is a factual basis for submission, when defendants undertook to inspect for hazards. *Brown, supra,* 665 S.W.2d at 634.

In *Hoover's Dairy, Inc. v. Mid–America Dairymen,* 700 S.W.2d 426 (Mo. banc 1985), our Supreme Court recognized that once the defendant undertook to render services for a milking system which it had installed, the defendant was obligated to exercise reasonable care in performing the service. The Court said: "The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken." 700 S.W.2d at 432. The Court also recognized the principle stated in the Restatement (Second) of Torts, Sec. 323 which states that one who undertakes to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking if his failure to exercise such care increases the risk of such harm.

The result we reach is also recognized in the Restatement (Second) of Torts, sec. 324A.

That section provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person or his things, for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

## VI.

■ In view of the above, the trial court did not err in admitting the police reports reporting evidence of prior non-violent crimes or in admitting the testimony of Brian Troupe, since under the circumstances such evidence was relevant.

Based upon the foregoing, the judgment is affirmed.

Judgment affirmed.

SIMON, C.J., and DOWD, J., concur.