Galen Frank WINN, by his Guardian Gail A. WINN, and Gail A. Winn, Appellants,

v.

Carl POLLARD and Glenn R. Welton, Respondents.

No. WD 59334.

Missouri Court of Appeals, Western District.

Dec. 4, 2001.

Pieter A. Brower, Ronald L. Kraft, Kansas City, for appellants.

Rhonda S. Loeppke, Independence, for respondent Pollard.

Terry M. Evans, Smithville, Shawn P. Battagler, Springfield, for respondent Welton.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Galen F. Winn and Gail A. Winn appeal from the trial court's grant of Carl Pollard's and Glenn Welton's motions for summary judgment on Appellants' petition for

damages resulting from a tractor accident. Appellants contend the trial court erred in sustaining Respondents' motions for summary judgment because 1) Respondents owed a duty to Galen in that Pollard assumed a duty to follow behind the tractor being operated by Galen on the highway, and Pollard breached that duty; and 2) Respondents, as co-owners of the tractor, owed a duty to Galen to provide safe equipment and a duty to warn Galen that the tractor was in a dangerous condition.

We affirm.

## Facts

Galen F. Winn was seriously injured on September 19, 1998, when the tractor he was driving on Highway 69 in Clay County, Missouri was rear-ended by a vehicle driven by Harrel Heavelow. Carl Pollard and Glenn Welton were the co-owners of the Allis Chalmers D–14 farm tractor at the time Galen was injured. At the time of the injury, Galen was thirty-four years old and married to Gail Winn, Pollard's daughter. Galen sustained brain damage in the accident and has been unable to work since the date of the injury.

On September 19, 1998, Galen was helping Pollard put emergency flasher lights on the rear of Respondents' tractor at Pollard's farm. After the emergency lights were installed, Galen got on the tractor to drive it to Welton's farm. Welton was not involved in the process of equipping the tractor with the emergency flashers, nor was he present at the time the decision was made regarding who and how to transport the tractor to the Welton farm. With the addition of the emergency flashers, the tractor was equipped with all safety equipment required by Missouri law. The tractor was not equipped with a roll

bar and seat belt, otherwise known as a roll-over protection system ("ROPS").[1]

Pollard had driven the tractor between his farm and the Welton farm on several occasions. Sometimes he would have someone else drive behind the tractor to provide extra safety to keep cars from coming from behind. Pollard recognized that any time one is on the highway in a slow-moving tractor, there is danger. When Galen was helping Pollard, Galen would drive the tractor from one farm to the other most of the time. Pollard was sure that he had followed behind Galen in his pickup truck before, and although there was no discussion between the two on the subject, that was his plan on this day.

Prior to September 19, 1998, there were no emergency lights on the tractor. The tractor had been moved from Welton's farm to Pollard's farm for the specific purpose of installing the flashing lights. As Galen drove the tractor down Pollard's driveway, Pollard followed, but before they reached the highway, Pollard turned around to meet with a visitor who was approaching the farm. Galen proceeded to drive the tractor on Highway 69 toward Welton's farm.

At about 2:30 p.m., Galen was driving the tractor on Highway 69 and was approximately 50 feet from Welton's farm when the tractor was rear-ended by Harrel Heavelow's vehicle. After the impact, the tractor rolled over and Galen was thrown from the tractor to the pavement and injured. Galen was using the most direct route to transfer the tractor from Pollard's farm to Welton's, approximately one and a half miles.

Welton was a 75 percent owner of the tractor and Pollard was a 25 percent owner. They had purchased the tractor in

---

1. The tractor was not required to be equipped with a ROPS under any law.

1987. Respondents kept track of their expenses for the tractor and then settled up every month. The tractor was being returned to Welton's farm for storage at the time of the collision.

Gail Winn was appointed as Galen's guardian and filed a petition against Respondents seeking damages for Galen's injuries and her loss of consortium. The petition alleged that Respondents were negligent in the following respects: 1) they had a duty to provide safe equipment to anyone who used the tractor, and they breached this duty by failing to include proper safety devices on the tractor; 2) the tractor did not have a ROPS and was therefore unsafe and Respondents should not have allowed Galen to drive the tractor; 3) Respondents knew or should have known that the tractor was likely to be dangerous if driven on the highway, but had no reason to believe that Galen realized that the tractor was in a dangerous condition, and Respondents failed to warn Galen of the dangerous condition; 4) Respondents otherwise failed in their duty to provide safe equipment, and in further particulars which were unknown to Appellants at the time; 5) Pollard, by driving behind the tractor, assumed a duty to provide protection against a rear-end collision and to drive the truck behind the tractor until it was safely delivered to Welton's farm, and Pollard breached that duty by not following Galen all the way to Welton's farm; and 6) Pollard was acting as the agent for Welton in assuming the duty to help transport the tractor to Welton's farm, and therefore Welton is liable for the breach of the duty Pollard assumed.

Respondents filed motions for summary judgment, which the court granted. With regard to Pollard, the court held that 1) Pollard had no duty to provide safety devices or equipment other than that already on the tractor; 2) Pollard had no duty to warn Galen that the tractor lacked a ROPS; 3) Pollard had no duty to follow behind Galen while operating the tractor on the highway; and 4) Pollard did not voluntarily assume such a duty. With regard to Welton, the trial court held that 1) the tractor was equipped with all safety equipment required by Missouri statute; 2) Welton's only involvement in the accident was that of a co-owner of the tractor; 3) Welton had no duty to provide, install, or retrofit a ROPS on the tractor; 4) Welton had no duty to warn Galen that the tractor lacked a ROPS; and 5) Welton was not present when the decision was made to transport the tractor from the Pollard farm to the Welton farm, and therefore he assumed no duty to follow behind Galen while operating the tractor on the highway.

This appeal follows.

## Standard of Review

We review a trial court's granting of summary judgment de novo, and we view the record in the light most favorable to the party against whom judgment was entered, giving the non-movant the benefit of all reasonable inferences from the record. *American Standard Ins. Co. v. Hargrave*, 34 S.W.3d 88, 89 (Mo. banc 2000). "Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*

## Point I

The first point on appeal is that the trial court erred in sustaining Respondents' motions for summary judgment because Respondents owed a duty to Galen in that Pollard assumed a duty to follow behind the tractor being operated by Galen on the highway, and Pollard breached that duty.

As previously mentioned, the trial court held that Pollard had no duty to follow behind Galen while operating the tractor on the highway, and Pollard did not voluntarily assume such a duty. The trial court also held that Welton was not present when the decision was made to transport the tractor from the Pollard farm to the Welton farm, and therefore he assumed no duty to follow behind Galen while operating the tractor on the highway.

Pollard, during his deposition, testified that he was planning to follow Galen to the Welton farm in his truck. He testified that Galen had driven the tractor from one farm to the other several times. He testified that he had sometimes followed the tractor with his truck in the past when it needed to be transported from one farm to the other, but not every time. Pollard testified that he followed Galen to the end of his driveway, and then turned back toward his house when he saw someone who was coming to his house to pick up something. He testified that he was sure he had driven behind Galen before when transporting the tractor, but on the day of the accident he and Galen had not discussed the subject of him following Galen. The record does not reflect that Pollard was following Galen at any point when he was operating the tractor on the public roadway.

■ "Whether a duty exists is purely a question of law." *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 155 (Mo. banc 2000). Appellants do not claim that Pollard had a legal duty, under Missouri law, to follow behind the tractor in his truck, and Appellants acknowledge that no such escort is required. Rather, they claim that Pollard assumed a duty by following behind the tractor and then breached that duty by not following him all the way to the Welton farm.

Appellants cite *Keenan v. Miriam Foundation*, 784 S.W.2d 298, 303 (Mo.App. E.D.1990), for the rule that when a duty is assumed, the defendant must exercise reasonable care. In *Keenan*, a woman went to donate some items to a charitable organization in a neighborhood of questionable safety. *Keenan*, 784 S.W.2d at 304. An employee of the organization asked her to go around to the back and assured her that someone would be with her and that it would be "all right." *Id.* She went to the back, and was subsequently left alone for five to ten minutes, during which time she was assaulted and shot. *Id.* The employee acknowledged that it was part of his job to stay with people on the lot. *Id.* The plaintiff alleged that she had entrusted her safety to the business and relied upon its express and implied assurances. *Id.* at 301. The court held that the organization assumed a duty to protect the woman from an unreasonable risk of harm, and failed to carry out the assumed duty to provide for the safety of the woman from attacks by third persons. *Id.* at 304.

*Keenan* is distinguishable from the present case in a number of aspects. Here there is no indication that Pollard and Galen agreed that Pollard would follow Galen. Nor is there any indication that Galen knew Pollard was following him before he turned back or that he relied on Pollard for his safety. The bottom line is that there is no indication Pollard ever undertook any responsibility for Galen's safety on that day. Therefore, we find, as a matter of law, that Pollard did not assume a duty to follow the tractor Galen was driving.

■ Hypothetically, if it could be said that Pollard initially, and briefly, undertook to follow Galen, such an undertaking does not automatically subject him to liability. Restatement (Second) of Torts § 323 (1965) provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Someone who gratuitously begins the aid of another is not necessarily required to continue his services, and the motive for discontinuing the services is immaterial. RESTATEMENT (SECOND) OF TORTS § 323 cmt. c (1965). A person "is not required to continue [his services] indefinitely, or even until he has done everything in his power to aid and protect the other. The actor may normally abandon his efforts at any time" unless

the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance.

*Id.* Even if Pollard had undertaken to follow Galen and then abandoned those efforts, the risk of harm was not increased. Galen was in no worse position than if Pollard had not begun to follow him in the first place. Either way, he is without an escort. The evidence indicates that having an escort was not a prerequisite for Galen, and there was no evidence Galen would have sought another escort if Pollard had refused. Galen had driven the tractor along the same route before without any escort. Also, as previously stated, there is no evidence that Galen relied upon Pollard to follow him. Regardless, we find Pollard did not assume a duty to follow Galen in the first place.

■ Regarding Welton, Appellants argue that although Welton was not present at the time of the accident, he is responsible for Pollard's actions because the installation of safety devices and the transportation of the tractor to Welton's property benefited Welton. Appellants argue Welton is liable, either directly or through analogy, based on the theories of agency, joint enterprise, and mutual benefit bailment. Point I concerns Pollard's alleged assumption of a duty to follow the tractor; therefore, we find that this argument is more properly addressed under Point II. Because we find that Pollard did not assume a duty to follow the tractor, we find that Welton may not be vicariously liable under the assumption of duty theory. Point I is denied.

### Point II

The second point on appeal is that the trial court erred in sustaining Respondents' motions for summary judgment because Respondents, as co-owners of the tractor, owed a duty to Galen to provide safe equipment and a duty to warn Galen that the tractor was in a dangerous condition.

The trial court held that Pollard had no duty to provide safety devices or equipment other than that already on the tractor, and that he had no duty to warn Galen that the tractor lacked a ROPS. The court also held that the tractor was equipped with all safety equipment required by Missouri statute, that Welton had no duty to provide, install, or retrofit a ROPS on the tractor, and that Welton had no duty to warn Galen that the tractor lacked a ROPS.

### Duty to Provide Safe Equipment

■ We first discuss Appellants' claim that Pollard and Welton breached their duty to provide safe equipment, specifically a ROPS. In *Morrison v. Kubota Tractor Corporation*, 891 S.W.2d 422, 423–24 (Mo. App. W.D.1994), the family of a man who was killed when his tractor rolled on top of him sued the manufacturer of the tractor on the theories of negligence and strict liability, claiming that the tractor was defective and unreasonably dangerous when originally manufactured and sold because it was not equipped with a ROPS. The trial court directed a verdict in favor of the manufacturer on the family's negligence claim. *Id.* at 425. This court stated that "the absence of a ROPS is something open and obvious which is readily revealed merely by looking at a tractor," and that

> [i]f the absence of a ROPS is to be regarded as a design defect, it is a defect that is patent beyond doubt. Such an open and obvious lack of this safety feature on the tractor purchased and operated by Morrison at the time of his death is not actionable under the negligence law of Missouri as declared by our Supreme Court.

*Id.* at 427–28.

■ Appellants argue that the finding in *Morrison* that a tractor manufacturer was not negligent in failing to install a ROPS does not resolve the question of whether Respondents are liable in this case for failing to provide safe equipment. However, while *Morrison* involved a manufacturer rather than an individual owner, *Morrison* established that the absence of a ROPS is open and obvious as a matter of law. Furthermore, the reasoning in *Morrison* in regard to manufacturer liability applies with equal force in the present case in regard to owner liability. Appellants argue the tractor was supplied to Galen for the specific purpose of transporting the tractor over the highway, and the tractor was not safe for this use. Appellants are apparently attempting to draw a distinction between the danger associated with operating a tractor without a ROPS on a farm and operating one on the highway. We find that this distinction is immaterial in the present case. There is no law that requires that a ROPS be installed on the tractor in this case, and we decline to impose on owners a requirement above and beyond those the legislature has established. Appellants' references to cases and other law analyzing liability in lessor-lessee and employer-employee situations are inapposite. We decline to extend any duties that may exist in those situations to impose liability on Respondents in the present case.

Appellants also cite Restatement (Second) of Torts § 392 [2] for the contention that "liability can attach where the use of the chattel is one in which the owner has a business interest." Pollard and Welton owed no duty to Galen to protect him from the patent risk of injury due to a tractor without a ROPS. Under the circumstances, they did not fail to exercise reasonable care to make the tractor safe for its planned use.

**2.** The Restatement of Torts 2d § 392 (1965) provides as follows:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

*Duty to Warn of Dangerous Condition*

 We next address Appellants' argument that Respondents had a duty to warn Galen that the tractor was in a dangerous condition. In support of their argument, Appellants cite Restatement (Second) of Torts § 388 (1965), which provides as follows:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, *if the supplier*
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition,* and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

(Emphasis added.) However, "[t]here is no duty or need to warn of dangers which are open and obvious or which are commonly known. The failure to so warn is not the proximate cause of a subsequent injury." *Young v. Wadsworth,* 916 S.W.2d 877, 878–79 (Mo.App. E.D.1996) (citations omitted). Because the absence of a ROPS is an open and obvious condition, § 388 does not mandate the imposition of liability on Pollard or Welton in this case.

 Appellants argue that although Welton was not present at the time of the accident, he is responsible for Pollard's actions because the installation of safety devices and the transportation of the tractor to Welton's property benefited Welton. Appellants argue Welton is liable, either directly or through analogy, based on the theories of agency, joint enterprise, and mutual benefit bailment. Appellants' argument that Pollard was acting as an agent for Welton must fail, as "co-ownership itself refutes agency." *Stover v. Patrick,* 459 S.W.2d 393, 400 (Mo. banc 1970). Appellants' argument that Welton is liable because he and Pollard were engaged in a joint enterprise must also fail. "The definition of 'joint adventure' is 'an association of two or more persons to carry out a single business enterprise for profit.' " *Eads v. Kinstler Agency, Inc.,* 929 S.W.2d 289, 292 (Mo.App. W.D.1996), quoting *Johnson v. Pacific Intermountain Express Co.,* 662 S.W.2d 237, 248 n. 6 (Mo. banc 1983). There is no evidence of a joint enterprise or adventure in this case. This is also not a case of mutual benefit bailment. Black's Law Dictionary defines "bailment for mutual benefit" as "[a] bailment for which the bailee is compensated and from which the bailor receives some additional benefit, as when one leaves a car with a parking attendant who will also wash the car while it is parked." BLACK'S LAW DICTIONARY 137 (7th ed.1999). No such situation existed here.

We find, as a matter of law, that Pollard and Welton are not liable for failure to provide safe equipment or for failure to warn of the tractor's dangerous condition. Point II is denied.

The judgment of the trial court is affirmed.

EDWIN H. SMITH, P.J., and HOLLIGER, J., concur.