Jessie JONES, Plaintiff-Respondent,

v.

NATIONAL SUPERMARKETS, INC.,
Defendant-Appellant.

No. 51803.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 21, 1987.

Motion for Rehearing and/or Transfer
Denied May 20, 1987.

Arthur H. Nissenbaum, St. Louis, for National Supermarkets.

Phillip Arthur Kramer, St. Louis, for Jessie Jones.

KAROHL, Judge.

Plaintiff as a customer in defendant's grocery store sustained personal injuries when he tripped against a free standing wrought iron cookie display rack placed in the aisle of defendant's grocery store. Defendant appeals a judgment in favor of plaintiff in accord with jury verdict awarding damages and assessing 100% of fault to defendant.

For two related reasons defendant contends that plaintiff failed to make a submissible case. It first argues that the cookie rack as positioned in the aisle did not constitute a dangerous condition and, second, it contends that the condition was open and obvious. Defendant concludes on the authority of Restatement of Torts § 343 as adopted by the Missouri Supreme Court in *Dixon v. General Grocery Co.*, 293 S.W.2d 415, 418 (Mo.1956) that it breached no duty to plaintiff and that plaintiff is not entitled to recover as a matter of law. In the alternative defendant asserts four claims of error in support of a request for new trial. They are: (1) the verdict is excessive and the product of passion and prejudice or mistake; (2) the determination that defendant was 100% at fault is inconsistent with the weight of the evidence; (3) the court erred in overruling defendant's objections to plaintiff's closing argument in two particulars; and, (4) the court committed plain error in permitting plaintiff to argue that comparative negligence is a compromise verdict which may be so considered during jury deliberations.

The applicable law was succinctly stated in *Dixon:*

"a possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c) invites or permits them to enter or remain upon the land without exercising reasonable care (1) to make the condition reasonably safe, or (2) to give a warning adequate to enable them to avoid the harm.."

*Dixon v. General Grocery Co.*, 293 S.W.2d at 418. The *Dixon* court also recognized that an inviter's duty applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. An invitee assumes normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known or obvious dangers. *Id.* at 418. A full exposition of § 343(A)(1) reads: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them unless the possessor should anticipate the harm despite such knowledge or obviousness." In comments to this section the authors of the Restatement have added in subsection (1)(f) "such reason to expect harm to the visitor from known or obvious dangers may arise, for example, whether the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered or failed to protect himself against it.." The authors, in illustration No. 2 under this section, set forth facts which are similar to our case and describe liability of a possessor of land to a customer for a fall over a weighing scale protruding into one of its aisles which is otherwise visible and quite obvious if the possessor displays goods in the vicinity of the scale to attract customers which display constitutes a distraction from seeing the otherwise ob-

vious scale. In order to recover plaintiff must show that either the instrumentality causing the injury is itself inherently dangerous and/or defective, or that it is placed in such a way that it creates a dangerous condition. *Grube v. Associated Dry Goods, Inc.*, 663 S.W.2d 310, 312 (Mo.App. 1983).

With these legal principles in mind we view the operative facts from a perspective most favorable to the verdict. *Grube v. Associated Dry Goods, Inc.*, 663 S.W.2d at 311. From the testimony of the plaintiff and defendant's store manager the jury learned that on February 14, 1983, plaintiff was a customer in defendant's store. Plaintiff was primarily interested in purchasing a frozen cake. He approached the display of refrigerated cakes. It was along the west wall of the store which he approached from along the north wall of the store. While traveling from the north to the south along the west wall he traveled eight feet more or less while observing the decorated cakes and frozen fresh pastries. He never saw the wrought iron display rack which was to his left and rear. It stood five foot eight inches tall and was approximately two feet long and fifteen inches deep. The cookie rack had no wheels or protrusions and was positioned at the south end of the cake display with the northwest leg closest to the cake display, a distance of fifteen inches.

Defendant's store manager testified that a person walking down the west wall and observing the dairy products and frozen cakes would not be able to see the cookie rack; that a person observing the cake display would have the cookie rack to his left and would not be facing it as he proceeded southwardly along that display; that he could thereby move behind the cookie rack while selecting a frozen cake. Plaintiff testified that that is the manner in which he approached the area of "danger". Plaintiff testified, ".. I didn't see the cake I wanted so I turned to leave and that's when somebody .. the cake rack was there." He encountered the cookie rack as he began to turn to his right and take a step. He just turned to leave and had not even taken a step when he fell over the

cookie rack. He did not walk into the display rack. While observing the frozen cakes the rack was to his back and a protrusion for another wall display blocked his path southwardly or to his left. He turned back to the north began a first step and tripped over the cookie rack which was behind him. He had not seen the cookie rack before he fell over it because he was looking at the cakes in front of him along the eight foot display. As a result of the fall he sustained injuries to his legs and lower back.

In defense of this appeal plaintiff agrees the cookie rack in itself was not inherently dangerous. He argues that the placement of the cookie rack in the public passageway together with plaintiff's motives for so placing the rack created a dangerous situation which was known or knowable to the defendant and which plaintiff had no reason to discover because defendant intended to distract plaintiff and did distract plaintiff by the decorated cake display. Plaintiff accuses defendant of creating a pathway behind the cookie rack which was the only means by which a customer was able to obtain frozen cakes. Under these circumstances plaintiff argues defendant assumed a duty of reasonable care to make the store safe or warn plaintiff as a customer and for the same reason the existence of the cookie rack at the location was not an open and obvious condition. It constituted a pitfall created by the defendant for its own commercial reasons. Defendant store manager acknowledged that the cookie rack was so positioned because defendant wanted customers to go behind the cookie rack; that it could have been placed flush up against a wall, but that would have prevented customer access to the cakes. The location of the cookie rack was determined for reasons of "merchandising" the cookies.

We find plaintiff made a submissible case. For its own purposes defendant had reason to expect that plaintiff's attention would be distracted by the cake display. A combination of the cake display and the location of the cookie rack created a danger. The rack was neither open nor obvi-

ous nor was plaintiff bound to see or know of it's location. All that plaintiff did was what defendant intended for him to do as a customer in search of a frozen cake.

Defendant's reliance on *Grube v. Associated Dry Goods, Inc.*, 663 S.W.2d 310 (Mo. App.1983) is misplaced. We there reversed a plaintiff's verdict and held that plaintiff failed to make a submissible case by failing to prove the existence of a dangerous condition because there was no expert evidence that a stool was inherently unstable and therefore dangerous to customers. The basis of that holding is that the subject matter required expert testimony and there was none. In the present case no expert testimony was required to prove that the creation of a pitfall for commercial reasons caused plaintiff to trip and fall. Proof of the dangerous condition did not depend on expert testimony. The evidence and reasonable inferences from the evidence was sufficient.

On the facts the existence and location of the cookie rack was not open and obvious to a customer such as the plaintiff who was searching for a frozen cake. Defendant's store manager acknowledged this fact. Accordingly, the cases relied upon by defendant asserting the general rule that an invitor is not liable for conditions which are open and obvious are inapplicable. The cookie rack was open and obvious only if a customer was walking down the aisle toward the cookie rack where he would be bound as a matter of ordinary care to see what was open and obvious. This does not apply where the conduct of the defendant invites plaintiff not to look and defendant, in the exercise of ordinary care could have foreseen the consequences. In the present case there is no evidence plaintiff had actual or constructive knowledge of the presence of the cookie rack until after he fell. We recall that plaintiff's attention was distracted by the frozen cake display as defendant intended. The passageway between the cookie rack and the frozen cake display created a dangerous condition not known to the plaintiff.

On the question of submissibility plaintiff has cited this court to *Walton v.*

*Greenberg Mercantile Corporation,* 1 Ill. App.2d 99, 116 N.E.2d 197, 198 (4th Dist. 1953) where the court found on similar facts that the plaintiff made a submissible case. We hold that plaintiff made a submissible case on the present facts.

■ In support of its argument for a new trial defendant alleges that the verdict was excessive and on that account a new trial should be granted. This is not exactly the issue that was presented to the trial court in defendant's motion for new trial where defendant argued that the verdict was grossly excessive. On our review of the evidence we find no abuse of discretion in denial of a new trial on this ground. *Goodloe v. Pink,* 683 S.W.2d 653, 655–656 (Mo.App.1984).

■ Defendant also contends that the court erred in not granting a new trial because the jurors returned a verdict for plaintiff and found the defendant 100% at fault. Again, our review of the facts indicated that there was evidence from which the jury could conclude that defendant was 100% at fault. In our view defendant for its own purposes invited the plaintiff to perform those acts as a customer which plaintiff performed. In so doing plaintiff tripped and fell over a display rack at a time when he did not know of the danger. Because defendant was looking forward and into the frozen cake display it is of no consequence that he was not paying attention to the location of the cake rack to his left and rear. Defendant has connected this claim of error with claims of error in overruling objections to closing argument of plaintiff which are considered hereafter. In itself we find no error in refusing to grant a new trial solely on the finding that the jury found defendant 100% at fault where the evidence supported the finding.

■ As a matter of plain error defendant claims that the following argument justifies a new trial. In plaintiff's final closing argument plaintiff told the jury:

The decision you make, if you say that National is wrong, maybe, just maybe, they will get the message that his cookie rack shouldn't be there; that they're cre-

ating a dangerous condition and maybe, maybe they will move it because they're not going to otherwise. Now, one last point here. Nobody has really talked to this up to this point. Defendant's taking the position it's Jesse Jones' fault. I've taken the position it's their fault. Well, you're being instructed and I talked to you about the concept of comparative negligence. You will consider that when you get back there. Now, ladies and gentlemen, I would suggest to you that if you made up your mind at this point one way to the other, you stick to your guns. Comparative negligence is basically a compromised position. If that's an alternative, fine. It's there. Consider it. But, it's my position that the only way you're going to tell National that this cookie rack is creating a dangerous condition is you've got to give them a message that tells them it ought to be moved or removed or placed in a different position.

We do not approve the proposition that a determination of comparative negligence is in any sense a compromise. It is a determination of fact comparing the degree of causation flowing from negligent acts of the defendant, if any, to the negligent acts of plaintiff, if any. For several reasons we reject this claim of error. First, the jury found defendants to be 100% at fault which indicated that no "compromise" was required. Second, the instructions submitted to the jury were in the form provided by MAI. Third, the claim of error is not one which, on the present facts, demonstrates a manifest injustice or miscarriage of justice. Rule 84.13(c).

■ Defendant's last contention of error offered to support its right to a new trial occurred when the court overruled defendant's objections to part of plaintiff's closing argument. The first incident occurred when plaintiff argued the following, "Now additionally, we go to the next point, plaintiff did not know and by using ordinary care could not have known of this condition. You've heard the testimony of Jesse. He said he never saw the rack at all. Okay. Well, could he have known or should he have known? Well, you have to judge the standard by the care of an ordinary person. You're not judging Jesse Jones as though he was an A student. An ordinary person is a C student." The objection was ".. it's up to the jurors to be guided by the definition and for them to decided what an ordinary person is." The reference in the objection was to instruction No. 7, based on MAI 11.05 which read, "The phrase 'ordinary care' as used in these instructions means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

Defendant contends that plaintiff's argument presented a false standard by which the jury would interpret MAI 11.05. Further, defendant argues that the statements constituted an argument on a matter of law and relies on *Busch & Latta Painting Corporation v. State Highway Commission*, 597 S.W.2d 189, 201 (Mo.App.1980). The jury was properly instructed under MAI 2.03 which cautioned the jury that instructions constitute the law of the case. The argument was based on plaintiff's view of the meaning of "ordinary." Further, on the facts of this case intelligence of plaintiff was not at issue. The jury was not called upon to decide a matter in which the plaintiff's I.Q. or grade point average would have made any difference. A plaintiff of ordinary intelligence with good eyesight would be no different than a plaintiff of extraordinary intelligence with good eyesight in terms of negligent conduct as a customer who was shopping as defendant desired customers to shop. We find no abuse of the trial court's broad discretion in refusing to grant a new trial for error on this claim. *Moss v. Kozeny-Wagner Const. Co.*, 625 S.W.2d 688, 690 (Mo.App.1981).

■ Plaintiff's counsel also made an argument which suggested to the jury that a small child or an elderly person in poor health could have sustained an injury in defendant's store from a fall similar to plaintiff's fall. Defendant objected to these statements as being improper, beyond the evidence and irrelevant to the lawsuit. This argument was made in the

**224**

opening part of plaintiff's closing argument. The context was a review of plaintiff's verdict directing instruction. Under the instruction the jury was required to find that defendant placed a display rack in an area of the store used for public passageway, in such a place to create a condition not reasonably safe for customers. Plaintiff's counsel argued that the cookie rack could have been put flush up against a fixed panel which would create no problem of danger or could have placed cookies in another part of the store, but did not do so for reasons of marketability. Immediately thereafter, he directed the jury's attention to the possibility that the injured customer was a little child or an elderly person in poor health. It is obvious and it was obvious to the jury that neither a small child nor an elderly person was involved, but such individuals are or may be customers in defendant's store. The focus of the argument was on the creation of "a condition not reasonably safe for customers" and that fact determination was required as a first consideration by the jury in determining the negligence of the defendant, if any, to its customers. Under the circumstances this was not an argument of facts not in evidence nor was it improper or irrelevant on the matter to which it was directed, defendant's negligence, if any. We find no error on this account. *See, Pyles v. St. Louis Public Service Co.*, 372 S.W.2d 114, 116–117 (Mo.1963).

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.