

# In the Missouri Court of Appeals
## Eastern District

### DIVISION FIVE

| | | |
|---|---|---|
| JOSEPH SIMMONS III, ET AL. | ) | No. ED112785 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | |
| | ) | Honorable David L. Vincent III |
| KEAT PROPERTIES, LLC, ET AL., | ) | |
| | ) | |
| Respondents. | ) | Filed: March 25, 2025 |

### Introduction

A motorist ("Motorist") drove his sports utility vehicle through a Starbucks café storefront in the Shoppes at Price Crossing on October 3, 2020 ("2020 incursion"). Joseph Simmons, Jamie Lyerla, Dustin Epperson, Jason Young, Sidney Karl Young, and Adrian Stein (collectively, "Plaintiffs") brought negligence and premises liability claims against Keat Properties, LLC, McKnight Investors, LLC, and Starbucks Corporation (collectively, "Defendants"). The circuit court granted summary judgment in Defendants' favor. Plaintiffs raise two points on appeal. In Point I, Plaintiffs argue Defendants had a duty to protect their invitees from the negligent acts of a third party. In Point II, Plaintiffs contend factual issues remain disputed as to whether the configuration of this parking lot can, by itself, constitute a dangerous condition.

Defendants owed no duty to protect Plaintiffs from the negligent acts of a third party because the negligence was not foreseeable, and imposing a duty under these facts would be

against public policy. Point I is denied. Plaintiffs provided no authority for their proposition the configuration of this parking lot is inherently a dangerous condition. Accordingly, as a matter of law, no genuine issue of material fact remains. Point II is denied. The circuit court's judgment is affirmed.

## Factual and Procedural History

### *Summary Judgment Procedure*

Because the parties dispute which facts are properly before this Court for consideration, this Court reviews summary judgment procedure before reciting the relevant facts. "Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." *Top Priority Transit, LLC v. Cape Auto Pool, Inc.*, 680 S.W.3d 536, 542 (Mo. App. E.D. 2023) (quoting *O'Donnell v. PNK (River City), LLC*, 619 S.W.3d 162, 166 (Mo. App. E.D. 2021)) (emphasis added). "If the court were to look beyond the facts pled on the Rule 74.04 record to the [circuit] court's full record it would be impermissibly acting as an advocate for a party." *Id.* "Thus, when reviewing a summary judgment, we may only review the undisputed material facts established by the process set forth in Rule 74.04(c); we do not review the entire [circuit] court record." *Id.* (quoting *Alvis v. Morris*, 520 S.W.3d 509, 512 (Mo. App. S.D. 2017)).

### *Factual Background*

The facts properly before this Court in the summary judgment record are: In 2006, Starbucks began leasing a café at the Shoppes at Price Crossing. McKnight Investors is the owner and landlord of the property. Keat Properties is the brokerage company that manages the property. Starbucks leases the café from McKnight and Keat. At the Shoppes, the parking lot is configured with nose-in parking spaces so patrons can park their cars close to and facing the stores. The sidewalk ran parallel to the storefront. In the fourteen years the Shoppes had been open before the

2020 incursion, only one prior incident occurred. In 2010 ("2010 incident"), a motorist veered into the Starbucks café at an angle, striking the corner of the building and the storefront. The motorist was not using the nose-in parking spaces directly in front of the café, but, rather, was in front of the neighboring tenant when her vehicle moved forward and struck the building.

In 2016, Starbucks proposed lease extension terms to Keat and McKnight. These terms included installation of site rail at the café at Starbucks' cost.[1] Starbucks sent a site rail proposal to Keat and McKnight which stated the site rail's purpose was to "provide an extra layer of protection between vehicles and Starbucks stores." Site rail was never installed, however, because of unrelated contractual disputes. Starbucks never sent a separate request to Keat and McKnight to add site rail to the café.

On October 3, 2020, Motorist drove his sport utility vehicle from a nose-in parking space directly in front of the café into the storefront.[2] One person died, and two others were injured. Plaintiffs sued Defendants and Motorist, raising two counts in their second amended petition: (1) negligence and (2) premises liability.[3] Defendants moved for summary judgment, arguing (1) they had no reason to know of the negligent acts of a third party because there was only one prior incident ten years earlier and (2) Plaintiffs did not submit sufficient evidence to prove the parking lot had any defective, hazardous, or dangerous condition. The circuit court granted summary judgment in Defendants' favor. The circuit court determined the undisputed facts demonstrated (1) Defendants had no reason to know of the 2020 incursion and (2) Plaintiffs did not demonstrate the parking lot had any defective, hazardous, or dangerous condition.

---

[1] Plaintiffs use the term "bollards" in their brief, while Starbucks uses the term "site rail." Bollards are short, sturdy posts, typically made of concrete or stainless steel. Site rail is two bollards connected with wood or metal. They both serve the same purpose: to prevent incursions into public spaces. This Court will use the term "site rail" to refer to both barriers.
[2] The record does not disclose why Motorist crashed into the café.
[3] All Plaintiffs settled their claims with Motorist before summary judgment.

This appeal follows.

## Standard of Review

"The standard of review on appeal regarding summary judgment is essentially *de novo*." *Kroner Invs.*, *LLC v. Dann*, 583 S.W.3d 126, 128 (Mo. App. E.D. 2019) (citing *Foster v. St. Louis Cnty.*, 239 S.W.3d 599, 601 (Mo. banc 2007)). "Summary judgment will be affirmed when the moving party has established a right to judgment as a matter of law 'on the basis of facts as to which there is no genuine dispute.'" *Holmes v. Steelman*, 624 S.W.3d 144, 148 (Mo. banc 2021) (quoting *Newton v. Mercy Clinic E. Cmtys.*, 596 S.W.3d 625, 628 (Mo. banc 2020)). "A defendant is entitled to summary judgment when [he or] she 'shows facts that negate any one of the necessary elements of the plaintiff's claim.'" *Neil v. St. Louis Cnty.*, 688 S.W.3d 268, 272–73 (Mo. App. E.D. 2024) (quoting *Blackwell Motors*, *Inc. v. Manheim Servs. Corp.*, 529 S.W.3d 367, 379 (Mo. App. E.D. 2017)).

This Court reviews the record "in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Green v. Fotoohighiam*, 606 S.W.3d 113, 116 (Mo. banc 2020) (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011) (*abrogated on other grounds by Glendale Shooting Club*, *Inc. v. Landolt*, 661 S.W.3d 778, 785 (Mo. banc 2023)). "[F]acts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Only genuine disputes of material facts preclude summary judgment. *Id.* at 115. "A material fact in the context of summary judgment is one from which the right to judgment flows." *Id.*

4

**Discussion**
*Point I: Negligence Claims*
*Party Positions*

Plaintiffs argue Defendants owed a duty to protect them against the negligent acts of a third party because an incursion was foreseeable. Defendants argue the crash was not foreseeable because the risk of an incursion was not so probable that a reasonable person would take precautions to avoid it.

*Analysis*

A legal duty can arise from one of three sources: (1) the common law, (2) the legislature, or (3) because the party assumed a duty by contract or conduct. *Scales v. Whitaker*, 615 S.W.3d 425, 431 (Mo. App. E.D. 2020). "The existence of duty is a pure question of law." *Aaron v. Havens*, 758 S.W.2d 446, 447 (Mo. banc 1988). Plaintiffs argue the common law created a duty for Defendants to protect their invitees from the negligent acts of a third party.[4] This Court disagrees.

*A.  No Duty Under Common Law*

"In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." *Harner v. Mercy Hosp. Joplin*, 679 S.W.3d 480, 484 (Mo. banc 2023). The duty of care for a possessor of land is at issue here. A possessor of land generally does not owe its invitees a duty to protect them from the negligent or criminal acts of a third party because

---

[4] Plaintiffs also argued Defendants' conduct during the 2016 lease extension proposal proves they undertook a duty to protect their invitees from the negligent acts of a third party. However, their argument violates Rule 84.04(e) because they cite no legal authority and provide no argument beyond conclusory statements. *Smith v. Med Plus Healthcare*, 401 S.W.3d 573, 576 (Mo. App. E.D. 2013). Even if this Court reviewed the argument *ex gratia*, it would fail because Defendants never undertook or "set about" to construct site rail; they merely proposed it. *Green v. Unity Sch. of Christianity*, 991 S.W.2d 201, 206 (Mo. App. W.D. 1999) (holding one undertakes a task when they "set about" to complete it).

possessors are not insurers of their invitees' safety.[5] *Meadows v. Friedman R.R. Salvage Warehouse, Div. of Friedman Bros. Furniture Co.*, 655 S.W.2d 718, 721 (Mo. App. E.D. 1983); *Faheen, By & Through Hebron v. City Parking Corp.*, 734 S.W.2d 270, 273 (Mo. App. E.D. 1987). Limited exceptions apply to this rule. *Harner*, 679 S.W.3d at 484. At issue here is the "special circumstances exception." Under this exception, the negligent or criminal acts of a third party are foreseeable—and thus the possessor owes a duty to protect its invitees—when the possessor "knows or has reason to know of dangerous persons in general frequenting its premises." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 849 (Mo. banc 2018). A possessor has reason to know of dangerous persons frequenting its premises when (1) prior similar incidents or (2) the totality of the circumstances puts the possessor on notice of the risk.[6] *Id.*

### 1. Prior Similar Incidents

Prior similar incidents only put a possessor on notice when they are (1) "sufficiently numerous," (2) recent, and (3) "similar in type to the prior specific incidents" to render further incidents foreseeable. *Faheen*, 734 S.W.2d at 273–74. Foreseeability does not require identical acts in identical locations. *L.A.C.*, 75 S.W.3d at 259. To be similar, the nature of the acts must share "common elements sufficient to place [possessors] on notice of the danger and alert it to the safeguards that are appropriate to the risks." *Knop v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 988 S.W.2d 586, 590 (Mo. App. E.D. 1999). Only those prior similar incidents that occurred on

---

[5] Plaintiffs argue this Court cannot rely upon cases analyzing a possessor of land's liability for criminal acts of a third party because this case involves the negligent act of a third party. However, the Restatement, which Plaintiffs base their claim on, combines criminal and negligent acts: "[A possessor of land] may, however, know or have reason to know … that he should reasonably anticipate careless *or* criminal conduct on the part of third persons …." Restatement (Second of Torts) § 344, cmt. f (emphasis added); *see also* Restatement (Second of Torts) § 344 (possessors of land may be liable for the "accidental, negligent, or intentionally harmful acts" of a third party).

[6] The Supreme Court of Missouri has not yet determined which of these tests for the foreseeability of criminal or negligent acts of a third party is the correct one. *See L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 258 (Mo. banc 2002) (declining to "enter the fray concerning whether a 'prior similar incidents,' 'totality of the circumstances,' or a 'balancing' test be adopted" because the plaintiff's evidence satisfied all three theories). Because Plaintiffs cannot succeed under the two theories raised here, this Court does not decide that question as well.

the same premises can be considered. *Brown v. Schnuck Markets, Inc.*, 973 S.W.2d 530, 533 (Mo. App. E.D. 1998).

Here, Defendants had no reason to know of negligent persons frequenting its premises because there were not sufficiently numerous nor recent similar incidents to put them on notice. Defendants argue the 2010 incident was not similar because the driver did not use Starbucks' nose-in parking, was in front of a neighboring business, and veered in from an angle. In the 2020 incursion, Motorist used Starbucks' nose-in parking, was in front of the café, and drove directly into the storefront. Defendants' analysis is too restrictive. This Court has never required prior similar incidents to be identical. *L.A.C.*, 75 S.W.3d at 259. Assaults and purse snatchings are dissimilar from an abduction and murder. *Wood v. Centermark Props., Inc.*, 984 S.W.2d 517, 524 (Mo. App. E.D. 1998). But prior incidents of violence against women are similar to sexual assaults, even if there are granular factual distinctions between the events. *L.A.C.*, 75 S.W.3d at 259 (finding the defendants' argument that a number of crimes which occurred outside of the mall in the parking lot or did not include common elements with plaintiff's rape was "too restrictive."). So too, here. While there are granular factual distinctions between the 2010 incident and the 2020 incursion, this Court recognizes their similarity for our analysis.

While the 2010 incident is similar to the 2020 incursion, a single incident ten years prior is not sufficiently numerous nor recent enough to put Defendants on notice of the negligent acts of a third party. First, several Missouri cases speak to the numerosity requirement. While no bright line exists establishing how many prior similar incidents are sufficient to create a duty to protect, no case has yet held that one is enough. In *Schnuck Markets*, this Court held one non-violent purse snatching and one robbery with indeterminable details were insufficient to establish a duty to

protect. *Schnuck Markets*, 973 S.W.2d at 534. In *Decker v. Gramex Corp.*,[7] the Supreme Court of Missouri held that one armed robbery, one purse snatching, and multiple thefts "might not be sufficient to establish a duty of care." *Decker v. Gramex Corp.*, 758 S.W.2d 59, 63 (Mo. banc 1988). The cases imposing a duty to protect have involved considerably more incidents. *Brown v. National Supermarkets, Inc.*, 679 S.W.2d 307, 309–10 (Mo. App. E.D. 1984) (holding sixteen robberies involving a firearm, seven strong armed robberies, and 136 other crimes over a two-year period were sufficient to impose a duty to protect); *Decker*, 758 S.W.2d at 61–63 (holding five armed robberies, four purse snatchings, a robbery in the second degree, an attempted armed robbery, an assault, an assault with a deadly weapon, stealing, and an attempted purse snatching were sufficient); *Madden*, 758 S.W.2d at 63 (holding six strong armed robberies, six armed robberies, one assault, and one purse snatching were sufficient).

Second, the 2010 incident does not meet the recency requirement. Under this Court's precedent, a prior incident ten years earlier is not recent enough to be considered in the foreseeability analysis. *Wood*, 984 S.W.2d at 524 ("[T]he only abduction was ten years earlier, which we do not consider sufficiently recent for the purposes of this exception").[8] Simply put, a single incursion ten years earlier is not sufficiently numerous nor recent enough to put Defendants on notice of the negligent acts of a third party.

---

[7] The Supreme Court of Missouri consolidated *Decker* with *Madden v. C&K Barbecue Carryout, Inc.*, 758 S.W.2d 59 (Mo. banc 1988) under the same case citation, but separately analyzed each case's facts. This Court will cite to the cases individually when referring to their specific facts to avoid confusion.

[8] Plaintiffs cite *Lopez v. Three Rivers Electric Cooperative, Inc.*, 26 S.W.3d 151, 156 (Mo. banc 2000), for the proposition that a prior incident 20 years earlier was not too remote. *Lopez* is distinguishable because it was brought under a traditional negligence suit, which involves a different foreseeability analysis than whether a possessor of land has a duty to protect an invitee under the prior similar incidents test.

Thus, further incidents were not foreseeable, and Defendants did not owe a duty to protect its invitees against the 2020 incursion.[9] Holding one prior similar incident is sufficient to impose a duty to protect on a possessor of land would transform possessors into insurers of their invitees' safety in contravention of this Court's precedent. *Meadows*, 655 S.W.2d at 721; *Faheen*, 734 S.W.2d at 273. Plaintiffs cannot demonstrate Defendants owed a duty to protect them against the negligent acts of a third party under the prior similar incidents test to preclude summary judgment as a matter of law.

### 2. Totality of the Circumstances

Even under the totality of the circumstances test, Defendants do not owe Plaintiffs a duty to protect them from the negligent incursion of a third party (1) under a foreseeability analysis and (2) because public policy does not support imposing a duty under *these* facts. "[W]hether a duty exists in a particular case depends on several public policy considerations including 'the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against it and the consequences of placing that burden on defendant.'" *Scales*, 615 S.W.3d at 436 (quoting *Hallquist v. Midden*, 196 S.W.3d 601, 604 (Mo. App. E.D. 2006)). "Another public policy consideration is whether a defendant has 'some right or obligation to control the activity that presents the danger of injury.'" *Id.* at 436 (quoting *Burrell ex rel. Schatz v. O'Reilly Auto., Inc.*, 175 S.W.3d 642, 656 (Mo. App. S.D. 2005)).

---

[9] At oral argument, Plaintiffs argued one prior incident is sufficient to put a possessor on notice for negligent acts of a third party, as opposed to the rule for criminal acts of a third party. The cases Plaintiffs cite hold the opposite. *See Dickinson*, 231 S.W.2d at 612 (holding one isolated instance where a newspaper vendor bumped shoulders with a man in the lobby did not put possessor on notice the vendor might knock over the plaintiff); *Hughes v. St. Louis Nat. League Baseball Club*, 224 S.W.2d 989, 994 (Mo. banc 1949) (holding the possessor was on notice of rowdy boys harming plaintiff because the possessor had "previously observed similar activities of this group on several occasions ….").

9

Under the totality of the circumstances, the factors to be considered "include the nature of the business location, the character of the business, and past [events] in the area." *Richardson*, 81 S.W.3d at 61. Even under the totality of the circumstances, prior similar acts "may constitute the most compelling evidence that the … act giving rise to an action is foreseeable and in many cases may be the only way for a plaintiff to sufficiently establish foreseeability …." *Id.* at 65. When analyzing prior similar incidents under the totality of the circumstances, this Court only considers those incidents "on the premises and in the area." *Id.* at 65.

### a. Foreseeability and Public Policy Factors

For an event to be foreseeable, "[t]he existence of a mere *possibility* is insufficient." *Lopez*, 26 S.W.3d at 156 (emphasis added). "[R]ather, there must be the existence of a *probability* which would cause a reasonable person to take precautions to avoid it." *Scales*, 615 S.W.3d at 436 (quoting *Hallquist*, 196 S.W.3d at 604) (emphasis added).

Plaintiffs argue the 2020 incursion was foreseeable because Defendants had both nationwide and area-specific notice of the negligent incursion of a third party.[10] As to the nationwide notice, Plaintiffs argue Starbucks had knowledge of 232 incidents in which a vehicle struck a Starbucks café between the 2010 incident and the 2020 incursion. This Court's precedent, however, does not consider nationwide incidents, only those "on the premises and in the area." *Richardson*, 81 S.W.3d at 65.[11]

---

[10] Plaintiffs also argue the incursion was foreseeable because their experts say it is. However, the existence of a duty is a pure question of law. *Aaron*, 758 S.W.2d at 447. On pure questions of law, an expert's opinion on the subject "is not binding on the court and does not raise an issue of material fact." *Mitchell v. Bd. of Educ. of Normandy Sch. Dist.*, 913 S.W.2d 130, 134 n.5 (Mo. App. E.D. 1996).

[11] Plaintiffs argued nationwide insurance newsletters warned businesses about the risk of storefront crashes by the negligent acts of third parties. This Court does not consider this fact because it is inadmissible hearsay. *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 162 (Mo. App. S.D. 2016). Even if it were not hearsay, the insurance newsletters constitute nationwide notice that this Court does not consider in its area-specific totality of the circumstances analysis.

As to the area-specific notice, Plaintiffs put forth evidence Defendants knew of the possibility of a second incursion into their storefront. During the 2016 lease extension proposal, Starbucks sent a document to Keat and McKnight which stated the purpose of its site rail was to "provide an extra layer of protection between vehicles and Starbucks stores." Plaintiffs' evidence of Defendants' knowledge of a possibility of an incursion does not change the fundamental question in a foreseeability analysis: whether a *probability* existed which would *cause a reasonable person to take precautions*. *Scales*, 615 S.W.3d at 436 (quoting *Hallquist*, 196 S.W.3d at 604). Just because Defendants knew of a *possibility* of an incursion does not prove a reasonable person would have taken precautions against it. Defendants' anticipation of a mere possibility of a risk is insufficient to impose a duty. *Lopez*, 26 S.W.3d at 156.

The import of this area-specific evidence thus turns on whether a reasonable person would take precautions against the negligent incursion of a third party. Plaintiffs argued a reasonable person would take precautions against an incursion for three reasons: (1) one prior similar incident occurred; (2) the parking lot had nose-in parking that aimed the front of cars at the storefront; and (3) Starbucks was a speed-oriented business generating frequent turnover in this dangerous parking lot. Plaintiffs argued the combination of these circumstances put Defendants on notice of a negligent incursion of a third party. However, this evidence is insufficient to prove a reasonable person would have taken precautions against the risk of an incursion.

As discussed above, the prior incident in this case is neither recent nor numerous enough to impose a duty to protect. Further, Plaintiffs cite no legal authority for the proposition this parking lot configuration is so inherently dangerous it would automatically place possessors on notice of a negligent incursion of a third party. Speed-oriented businesses with nose-in parking facing the storefront includes innumerable gas stations, restaurants, strip malls, coffee shops, and more.

Finding these facts put a possessor on notice would expose a vast swath of Missouri businesses to tort liability for common parking lot configurations, making property possessors insurers of invitees' safety generally. This would be contrary to Missouri law. *Meadows*, 655 S.W.2d at 721; *Faheen*, 734 S.W.2d at 273. Finally, Defendants have no right or obligation to control the activity of a third party on their premises under these circumstances. *See Scales*, 615 S.W.3d at 437 (holding a defendant "had no right or obligation to control Decedent from walking on a public road"); *Harner*, 679 S.W.3d at 484.

Because one prior similar incident is not enough to impose a duty to protect and because Plaintiffs have not demonstrated the parking lot design and the speed-oriented nature of Starbucks' business are so dangerous as to automatically put a possessor on notice of the negligent acts of a third party, the 2020 incursion was not so probable that a reasonable person would take precautions against it. In addition to a lack of foreseeability, the additional public policy factors favor not imposing a duty because the magnitude and consequences of imposing a duty are immense—as a duty under these circumstances would transform possessors into insurers of their patrons' safety— and Defendants had no right or obligation to control Motorist's driving. *Meadows*, 655 S.W.2d at 721; *Faheen*, 734 S.W.2d at 273; *Scales*, 615 S.W.3d at 437. Because the 2020 incursion was not foreseeable under Missouri law, and because the public policy factors favor not imposing a duty, Defendants owed no duty to protect Plaintiffs under a totality of the circumstances analysis.

Because Defendants owe no duty to Plaintiffs under these specific facts when applying either the prior similar incidents test or the totality of the circumstances test, they have established a right to judgment as a matter of law based on facts as to which there is no genuine dispute. Point I is denied.

12

Plaintiffs argue the configuration of the parking lot itself was the dangerous condition and Defendants had a duty to warn or take corrective action to remove the dangerous condition to protect its invitees. Defendants contend that, as a matter of law, Plaintiffs cannot identify a dangerous condition on the premises.

*Analysis*

"Generally, the dangerous condition is some sort of *artificial condition* on the property itself, not a negligent or dangerous act of one of the inhabitants of such property." *Williams v. Barnes & Noble, Inc.*, 174 S.W.3d 556, 560 (Mo. App. W.D. 2005) (emphasis added). "Conditions on land are usually in the nature of 'hidden dangers, traps, snares, pitfalls, and the like.'" *Cook v. Smith*, 33 S.W.3d 548, 553 (Mo. App. W.D. 2000) (quoting *Jones v. Nat'l Supermarkets, Inc.* 729 S.W.2d 218, 220 (Mo. App. E.D. 1987)). "When the facts pled establish that a defendant's liability arises from its negligent acts or omissions, rather than from a dangerous condition existing on the land, the facts support a claim of general negligence." *Cossey v. Air Sys. Int'l, Inc.*, 273 S.W.3d 588, 591 (Mo. App. E.D. 2009).

Here, Plaintiffs have provided no legal authority for the proposition that the configuration of the parking lot can itself be the dangerous condition. All of Plaintiffs' cases concern an artificial condition on the property constituting the dangerous condition. *Brown v. Morgan Cnty.*, 212 S.W.3d 200, 203 (Mo. App. W.D. 2007) (downward sloping stairs); *Rycraw v. White Castle Sys., Inc.*, 28 S.W.3d 495, 497 (Mo. App. E.D. 2000) (warning cone); *Rhodes v. Kandlbinder, Inc.*, 557 S.W.3d 502, 504 (Mo. App. E.D. 2018) (entrance step); *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 901 (Mo. App. E.D. 1996) (briefcase); *Bartel v. Cent. Markets, Inc.*, 896 S.W.2d 746, 748 (Mo. App. E.D. 1995) (uneven sidewalk slabs); *Tiger v. Quality Transp., Inc.*, 375

S.W.3d 925, 926 (Mo. App. S.D. 2012) (cracked or uneven parking lot). Plaintiffs have not proven the parking lot, without third party intervention, inherently posed a physical threat to invitees. *See Alexander v. State*, 756 S.W.2d 539, 542 (Mo. banc 1988). The real danger was not the configuration of the parking lot, but the negligence of a third party in crashing through the café. Plaintiffs have provided no authority to convince this Court otherwise.

Plaintiffs cite *Brown v. Morgan County* for the proposition that an expert proclaiming a dangerous condition exists can establish a genuine issue of material fact to preclude summary judgment. *Brown v. Morgan Cnty.*, 212 S.W.3d 200 (Mo. App. W.D. 2007). In *Brown*, a woman slipped and fell down a staircase inside a courthouse. *Id.* at 203. Her expert proclaimed the steps were a dangerous condition because they were on a "pretty major downward slope." *Id.* The Court held the expert's testimony established a genuine issue of material fact as to whether an unreasonably dangerous condition of the stairs contributed to her fall. *Id.* at 205. Plaintiffs argue their expert asserted the configuration of the parking lot was a dangerous condition and that this testimony, like in *Brown*, established a genuine issue of material fact. *Brown* is distinguishable, however, because that case involved a dangerous condition recognized by law for public property. *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 915 (Mo. App. W.D. 2004) (quoting *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985)). Here, as discussed above and as a matter of law, Plaintiffs did not provide this Court with authority to hold the configuration of the parking lot itself constitutes a dangerous condition.[12]  Point II is denied.

---

[12] Plaintiffs extensively cite alleged violations of the International Property Maintenance Code ("IPMC"), adopted by the City of Olivette, Missouri, where this Starbucks was located. To the extent Plaintiffs argue Defendants violated the code, no IMPC provision requires the placement of site rail in front of a building. To the extent Plaintiffs are arguing the IPMC establishes a genuine dispute of material fact regarding control of the parking lot, Defendants have already established a right to judgment as a matter of law because they have shown Plaintiffs cannot and will not be able to prove the dangerous condition element of their premises liability claim. *See Premium Inv., LLC v. Lowther Johnson, Attorneys at Law, LLC*, 575 S.W.3d 744, 751 (Mo. App. S.D. 2019) (quoting *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. banc 2006) (holding party cannot prevail on summary judgment if they cannot or will not be able to prove one or more elements of their claim)).

**Conclusion**

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Thomas C. Clark II, C.J. and
Robert M. Clayton III, J. concur.

15